IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE | ) |
| | ) |
| RAYMOND AND JENNIFER BENEFIELD, | ) CASE NO. 07-33372-H3-13 |
| | ) |
| Debtors | ) |
| | ) |

## MEMORANDUM OPINION

The court has heard the "Objection to Claim No. 5 Filed by Daimler Chrysler Financial Services Americas, LLC" (Docket No. 89) filed by Raymond and Jennifer Benefield, Debtors, and the Response (Docket No. 93) filed by DaimlerChryler Financial Services Americas L.L.C. ("Claimant"), and after review of the file, pleadings, evidence and argument of counsel, the court sustains the Objection and values the collateral of Claimant at $13,688.00, for purposes of determining the secured amount of Claimant's claim.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment will be entered simultaneously with this Memorandum Opinion.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

1. Debtors filed a voluntary Chapter 13 petition, pro se, on May 24, 2007. Docket No. 1. They subsequently retained counsel on July 8, 2007.

2. Claimant is the holder of a secured claim against the Debtors pursuant to a Retail Installment Sales Contract and a security interest in a 2004 Chrysler Pacifica, Vehicle Identification Number 2C8GF68454R385699. Claimant's Exhibit Nos. 2 and 3. Claimant filed a Proof of Claim in the amount of $15,906.59. Debtors' Exhibit No. 3. Claimant contends that the replacement value of the vehicle is $16,725.00.

3. In Debtors' proposed Chapter 13 plan the vehicle is valued at $13,688.00. Debtors' Exhibit No. 1. Debtors object to the amount of the claim filed by DamilerChrysler and request that the court reduce the claim to reflect the value of the vehicle, considering its present condition and the current market conditions.

4. The proper valuation standard to be applied with respect to property acquired for personal, family, or household purposes, is replacement value, which means the price a retail merchant would charge for property of that kind, considering the age and condition of the property, at the time value is determined. Section 506(a)(2).

5. Claimant contends that the replacement value of the vehicle, at the time of the bankruptcy filing on May 24, 2007, was $16,725. Claimant's contention is based solely upon the "clean retail value"[1] for this type of vehicle as stated in the N.A.D.A. Official Used Car Guide dated May 2007, taking into account the fact that the vehicle's mileage was approximately 55,000. DamilerChrysler's Exhibit No. 1.

6. Debtor, Raymond Benefield, testified that the vehicle was valued in Debtors' original schedules, which were filed pro se, at $10,800.00. Debtor based this valuation upon the replacement value of a vehicle of similar condition, as quoted to him from the Chrysler dealership where Debtors purchased the vehicle. After retaining counsel, Debtors' schedules and plan were amended on July 11, 2007 and reflect that the value of the vehicle is $13,688.00. Debtors' Exhibit No. 2, Docket Nos. 51 and 52. Debtors' plan was again amended on August 15, 2007, but the value of the vehicle remained the same. Docket No. 76.

7. Debtors' valuation is based upon the N.A.D.A. Guide as well as his own research. The Debtors' valuation is an average of the clean trade-in value of $12,425.00 and the clean

---

[1] "Clean" according to the Guide means a vehicle that is clean and without glaring defects, tires and glass are in good condition, paint matches with a good finish, the interior is worn in relation to the age of the vehicle, clean carpet and seat upholstery, and all power options working.

retail value of $14,950.00 listed on the N.A.D.A. website as of July 10, 2007.  Exhibit B attached to Objection to Claim, Docket No. 89.  Debtor testified that about the time he consulted his attorney, sometime in June 2007, he went to several other places (AutoNation, Autotrader, and CarMax) to acquire replacement valuations on the vehicle.  He testified that the value of $13,688 for the vehicle was an accurate reflection of the valuations he received from these other sources.  The court found Debtor to be credible.

8.   The valuation process is not an exact science and valuation determinations are often based on estimates and approximations, and to some extent, speculation.  The court finds that the value of Debtors' 2004 Chrysler Pacifica is $13,688.00.

### Conclusions of Law

1.   Section 506(a)(1) provides that an allowed claim is a secured claim only to the extent "of the value of such creditor's interest in the estate's interest in property..." Thus, section 506(a) directs a determination of (i) the estate's interest in the collateral to be valued, and (ii) the creditor's interest in that interest.

2.   Once the court has identified the creditor's interest in the estate's interest in the collateral, the court must then determine the relevant valuation standard to be applied in valuing the creditor's interest.  Section 506(a) instructs the

court to consider the purpose of the valuation and the proposed disposition of the collateral.

3. The purpose of the valuation in this case is to determine the amount of the claim in order to know how much the Debtors have to pay the secured creditor to confirm their plan in accordance with 11 U.S.C. § 1325(a)(5). The proposed disposition is the Debtors' continued retention and use of the vehicle in order to be able to fund the plan. See 4 *Collier on Bankruptcy* ¶ 506.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) and cases cited therein.

4. The Supreme Court determined that the appropriate method of valuation is the hypothetical purchase method, defined as replacement value measured at what the debtor must pay for like property of the same condition and age. However, the Supreme Court did not specify particulars:

> Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to the bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property.

*Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965, 117 S.Ct. 1879, 1886 n.6, 138 L.Ed.2d 148, 160 (1997).

5. The Supreme Court in *Rash* recognized the concern that a creditor receive compensation and protection in exchange for the tangible loss of valuable nonbankruptcy rights, such as

5

the present right to foreclose and liquidate its position.  The Supreme Court's focus was on the appropriate standard to use to measure the value of the creditor's allowed secured claim with respect to property that the debtor proposed to retain during the term of its plan.  *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962-63, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148, 158 (1997); See 4 *Collier on Bankruptcy* ¶ 506.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

      6.   Similarly, in valuing collateral that the debtor proposes to retain and use, the bankruptcy court may have to adjust its determination to the extent that it reflects "the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965 n.6, 117 S.Ct. 1879, 1886 n.6, 138 L.Ed.2d 148, 160 n.6 (1997).

      7.   In 2005, Congress amended section 506(a) by retaining the original section under section 506(a)(1) and adding a second subsection, section 506(a)(2).  Section 506(a)(2) specifies that the proper valuation standard to be applied for an individual chapter 7 or chapter 13 debtor, with respect to personal property securing an allowed claim, is the replacement value of the property as of the date of the bankruptcy filing, without deduction for costs of sale or marketing.  However, this

subsection further provides that with respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind, considering the age and condition of the property, at the time value is determined, which in this case is the date of the hearing.  *See In re De Anda-Ramirez*, 359 B.R. 794, (10th Cir. BAP 2007).

8. "The bankruptcy court's determination as to the value of the property is a factual finding." *In re Blankenship*, 258 B.R. 637, 645 (E.D.Va. 2001).   Congress did not mandate that, in valuing a motor vehicle securing a creditor's claim, debtors had to use the blue book retail value.  It is a common practice among bankruptcy courts to use N.A.D.A. values as a starting point in vehicle valuation.  *In re De Anda-Ramirez*, 359 B.R. at 796.

9. Determinations of value in the bankruptcy context do not rise to the level of "mathematical certitude." *Consolidated Rock Prods. Co., v. Du Bois*, 312 U.S. 510, 526, 61 S.Ct. 675, 85 L.Ed. 982 (1941).  Even when opined upon by experts, valuation determinations often "depend on assumptions, predictions, and, to some extent, speculation." *See In re EFH Grove Tower Assocs.*, 105 B.R. 310, 314 (Bankr. E.D.N.C. 1989); *see also In re Simmons*, 113 B.R. 942, 947 (Bankr. W.D.Tex. 1990).

10. A  separate Judgment will be entered sustaining

the Objection to Claim and valuing the 2004 Chrysler Pacifica, Vehicle Identification Number 2C8GF68454R385699, at $13,688.00, for purposes of determining the secured amount of DaimlerChrysler Financial Services Americas, L.L.C.'s claim.

       Signed at Houston, Texas on this 5th day of December, 2007.

                                         _____
                                         LETITIA Z. CLARK
                                         UNITED STATES BANKRUPTCY JUDGE